**SHIPPING CORPORATION OF INDIA, LTD., Plaintiff,**

v.

**The AMERICAN BUREAU OF SHIPPING, Defendant.**

**No. 84 Civ. 1920 (CBM).**

United States District Court, S.D. New York.

Jan. 22, 1985.

Healy & Baillie by John P. McMahon, New York City, for plaintiff.

Kirlin, Campbell & Keating by William J. O'Brien, Thomas R. Daniels, New York City, for defendant.

## OPINION

MOTLEY, Chief Judge.

Plaintiff, The Shipping Corporation of India, Ltd. (hereinafter "SCI"), an Indian corporation with its offices in India, brings this action to recover money damages in the amount of $88,965,086.00, from defendant, American Bureau of Shipping (hereinafter "ABS") a non-profit corporation formed under a "Special Act" of the State of New York in 1862. SCI alleges that the claimed damages were suffered as a result of the fault, neglect, errors, and omissions

of ABS in connection with ABS' "classification" services.

The action is presently before the court on ABS's motion to dismiss on the ground of *forum non conveniens*.

FACTS

ABS is a "classification society" which formulates and publishes rules and standards by which it rates the fitness of vessels for their intended service. ABS' primary duty is to certify the soundness and seaworthiness of merchant vessels. Classification by a recognized classification society is a prerequisite to registration of merchant vessels and to procurement of insurance upon them and their operations.

The classification process proceeds as follows:

> The Classification Process consists of a) the development of Rules, Guides, standards and other criteria for the design and construction of marine vessels and structure, for materials, equipment and machinery, b) the review of design and survey during and after construction to verify compliance with such Rules, Guides, standards or other criteria and c) the assignment and registration of class when such compliance has been verified.

Rule 1.1 of ABS' "Rules for Building and Classing Steel Vessels" (1980 edition).

SCI owns and operates ocean-going cargo vessels which operate in international commerce, including ports of the United States. Among the merchant vessels SCI owns are the four "Ore-Bulk-Oil" (hereinafter "OBO"), vessels classified by ABS, at issue here.

All four vessels were constructed in Yugoslavia by Brodogradiliste Tvornica Diesel Mortora (hereinafter "Shipyard"). Hulls 254 and 261 were originally ordered by a Swiss corporation but sold to SCI before completion or classification. Hulls 270 and 271 were built directly for SCI.

SCI applied to ABS for classification of the four vessels, using ABS' standard printed form which bears New York, New York as ABS' address. Drawings were submitted to ABS' Genoa office for review and analysis. Smaller scale plans were reviewed at ABS' offices in England and Germany. ABS surveyors from the Genoa office inspected the four vessels prior to their classification as OBO vessels.

Problems developed after SCI put the four vessels into service as OBO vessels which required remedial measures to be undertaken by ABS. SCI made the final decision on all remedial measures only after conferring and negotiating with ABS' New York office and overseas staff, and the Shipyard.

The crux of SCI's complaint is that the vessels were not suited for use or service as OBO vessels because they were incapable of withstanding the normal stress incident to their operation in that capacity. Specifically, SCI alleges fault, neglect, errors, omissions, and breaches of or by ABS, or those for whom it is responsible, in performance of its obligations with respect to:

A. ABS' formulation of its Rules and standards applicable to ABS' design review and approval, construction surveys and classification of OBO type vessels;

B. ABS' application of its Rules and standards to the design review and approval, construction surveys and classification of SCI's OBO's;

C. ABS' neglect or default in specifying and approving corrosion control procedures; and

D. ABS' services, inspections, structural analyses, investigations and recommendations performed and made during construction and after delivery of SCI's OBO's.

ABS brings this motion to dismiss on the ground of *forum non conveniens.* ABS supports this motion by claiming that none of the significant acts involved in this dispute took place in this jurisdiction and that the proper forum for trial of this matter is in Yugoslavia. ABS further supports its motion by asserting that SCI has an outstanding arbitration proceeding pending in England against the Shipyard. SCI opposes the motion, asserting that New York is not only ABS' principle place of business,

but also where ABS promulgates and interprets its rules and standards.

### DISCUSSION

■ Dismissal of an action on the grounds of *forum non conveniens* is available only if there exists an "adequate alternative forum that possesses jurisdiction over the entire action and over all the named defendants." *Gibbons v. Udaras na Gaeltachta,* 549 F.Supp. 1094, 1120 (S.D.N.Y.1982) [citing *Pain v. United Technologies Corp.,* 637 F.2d 775, 784 (D.C. Cir.1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981) ].

■ The decision whether to dismiss an action on the ground of *forum non conveniens* is committed to the sound discretion of the district court. *Piper Aircraft Company v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). In exercising that discretion, the court is to weigh certain enumerated factors involving both the private interest of the litigants and the public interest. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Piper Aircraft Corp., supra,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419.

■ In *Gulf Oil, supra,* the Supreme Court articulated the private and public interest that a court must weigh in deciding whether a plaintiff's choice of forum should be rejected on grounds of *forum non conveniens.* The important considerations with respect to the private interests of the litigants include: relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining willing, witnesses; and all other practical problems that make trial of the case easy, expeditious, and inexpensive. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843. The public interest factors that require examination include: administrative difficulties effected by court congestion; the desirability of having localized controversies decided at home; and the avoidance of unnecessary problems in conflicts of law and the application of foreign law itself. *Id.,* at 508–9, 67 S.Ct. at 843. In addition, a court must evaluate the enforceability of a judgment rendered by it,

"weigh relative advantages and obstacles to fair trial," and determine whether the plaintiff has instituted suit in a particular forum with the intent to vex or harass the defendant. *Id.* at 508, 67 S.Ct. at 843.

■ The plaintiff's choice of forum should only be disturbed where the balance is strongly in favor of the defendant. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843. In sum, the relevant inquiry is whether it would be so much easier and fairer to try the case in an alternate forum than in New York that the balance strongly favors dismissal. *Manu International, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 65 (2d Cir.1981).

The plaintiff contests defendant's assertion that Yugoslavia is an adequate alternative forum possessing jurisdiction over the entire action and over the defendant. Only upon a determination that Yugoslavia satisfies the jurisdictional requirements may the court consider the previously mentioned factors of private and public interest.

Both parties have submitted affidavits of attorneys qualified to render an opinion on Yugoslav law. These affidavits address the following issues: 1) whether Yugoslav courts have or would take jurisdiction over the action; 2) whether under Yugoslav law there is a procedure similar to impleader under which ABS may file third-party complaint against parties who are alleged to be liable to it in indemnity or are liable for contribution to damages claimed by SCI; 3) whether Yugoslav courts have the power to require witnesses residing in Switzerland and/or Italy to appear for examination in Yugoslavia; 4) what law would Yugoslav courts apply in deciding this action; 5) if Italian law were to apply in this case, whether the Yugoslav courts are familiar with Italian law or would expert evidence of Italian law be required; and 6) whether a foreign defendant corporation must maintain a court registered representative office in Yugoslavia in order for Yugoslav courts to have jurisdiction over matters involving the defendant.

Neither of the legal experts were in agreement as to the Yugoslav courts' jurisdiction to entertain this action against the defendant. Although both attorneys are highly qualified to render such opinions, this court is of the view that the Yugoslav courts have the power to exercise judicial jurisdiction over the instant action.[1] Therefore, a *forum non conveniens* dismissal might be possible. However, a *forum non conveniens* dismissal is only appropriate if the factors of private and public interest strongly favors the defendant.

An examination of the private interest factors articulted in *Gulf Oil* begins with the relative ease of access to sources of proof. The inconvenience of New York as a forum is exhibited through three factors. These factors are: SCI's employees and officers reside in India; ABS has documents and records in Yugoslavia and Western Europe; and ABS asserts that it may wish to implead Shipyard or some other foreign third-party defendant. Several factors point to the relative convenience of New York as a forum, including: ABS requires retention of a copy of all plans in New York; ABS' Principal Surveyor in Genoa during the design approval stage of the building of the vessels, Mr. Borum, is now in New York; and according to the 1977 telex, many ABS New York employees were working on the project during its classification.

With respect to the availability of compulsory process for attendance of unwilling witnesses, most of the witnesses are likely to be employees of ABS and SCI. In addition, since disputed acts took place in many different jurisdictions the availability of compulsory process would be limited no matter where the case is heard.

The cost of obtaining willing witnesses would be expensive in New York, as it would be in any alternative forum since witnesses are scattered among India, Italy, New York, and Yugoslavia. The cost factor incident to obtaining witnesses is not as substantial when viewed in light of SCI's claim that exceeds $88,000,000.

Practical problems that weigh in favor of dismissal include: the concentration of activity in Yugoslavia, Italy, and India; the

---

**1.** Counsel for defendant requested Dragos Jovovic to render an opinion regarding questions of Yugoslav law. In an affidavit dated July 16, 1984, Jovovic concluded that Yugoslav law provided the Yugoslav courts judicial jurisdiction over the action and over the defendant. He stated that Article 60 of the Code of Civil Procedure grants Yugoslav courts specific jurisdiction over foreign corporations as defendants if such defendant has a representative office in Yugoslavia. Article 60 provides as follows:

> In actions against an individual or legal person that has domicile outside of the country with respect to obligations undertaken or which must be performed in the SFRY, complaint may be filed with a Yugoslav court within whose territory is found the person's permanent representative office in the SFRY or the domicile of the body entrusted with carrying out that person's business.

It is uncontested that ABS has a validly registered representative office in Yugoslavia.

Article 492 of the CCP provides:
> In actions to determine the existence or nonexistence of a contract, the performance or

breach of a contract, as well as in actions for damages arising out of failure to perform a contract, in addition to the court of general jurisdiction, also competent is the court in whose territory defendant is required to perform the contract by agreement of the parties.

Mr. Iovovic opines that the entry into and performance of the Requests for Classification surveys with respect to each of the ships in Yugoslavis by ABS's offices in Yugoslavia is sufficient to provide the Yugoslav courts jurisdiction pursuant to Article 492.

Mr. Ivkovic, plaintiff's expert, states in his affidavit that Yugoslavia courts would not have jurisdiction over this action and the defendant pursuant to Article 492. He believes that due to the "overwhelming contractual obligation of the defendant, the formulation of rules, approval of design, changes etc.... Yugoslav court[s] would not accept jurisdiction" on the ground that inspection in the shipyard at Split, Yugoslavia would not be considered the basic obligation of the defendant but rather, merely one of the later phases of ABS' obligations.

limited nexus of activity to the United States; the lack of in personam jurisdiction over the Shipyard should ABS decide to implead them; and the real lack of convenience for SCI in litigating in New York. However, since the parties consistently dealt with each other in English all evidence would need to be translated if the case were tried in Italy or Yugoslavia. The burden of litigating a case in a foreign language has been held to mitigate against dismissal. *Manu International, S.A.*, 641 F.2d at 66.

Moreover, ABS is a New York corporation with its principal place of business being New York City for over one hundred years. ABS formulates and published its classification rules here and subsequently interprets them here. The ultimate authority for ABS rests in New York. These factors are all important public interest concerns pointing towards retention of jurisdiction over the action.

More importantly, ABS' standards and rules have been afforded statutory effect in the United States. *In Re Marine Sulphur Transport Corp.*, 312 F.Supp. 1081, 1094 (S.D.N.Y.1970), aff'd in part, rev'd in part on other grounds, sub nom. *In Re Marine Sulphur Queen*, 460 F.2d 89 (2d Cir.), cert. denied, 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972). In addition, the structural analyses performed after delivery of the vessels were performed and directed from New York. Given these factors and the fact that ABS' rules and standards are promulgated and interpreted here, New York may have the greatest local interest in the adjudication of the issues involved in the dispute.

With respect to conflicts of law considerations, since ABS' rules and standards are afforded the effect of law in the United States in vessel design and construction matters this forum has a strong policy reason for applying its own law in evaluating ABS' formulation and implementation of those standards and rules. Even though the construction of the vessels occurred in Yugoslavia and the design review occurred in Italy the issue at hand is whether ABS, acting through its authorized surveyors and investigators in those countries, conformed to its own rules when surveying the construction and evaluating the design. The rules themselves and their implementation are at issue, not the law of a foreign nation. Moreover, ABS' remedial investigations were centered in and controlled from New York.

■ Even if foreign law were found to apply to this action, the need to apply foreign law is not itself sufficient reason to apply the doctrine of *forum non conveniens*. *Manu International, S.A.*, 641 F.2d at 67. The courts of this country are capable of applying foreign law whenever necessary.

The fact that ABS may wish to implead the Shipyard or another third-party defendant must be considered. ABS, however, has neither made it clear that a third-party defendant would be impleaded in this action, nor offered proof that it would have a claim under whatever foreign law it regards applicable, that impleader procedures are available in any of the alternate forums, or that the alternate forums would have jurisdiction over third-party defendants other than those that reside in the forum.

The instant action is similar in one respect to *Lynn v. Elizabeth Arden, Inc.*, 77 Civ. 2031 slip. op. (S.D.N.Y. 1971) (J. Motley), where the defendant alleged that it "might" implead the State of Arizona. Defendant's motion to dismiss on the ground of *forum non conveniens* was denied as the court asserted, "[i]t is not clear that Arizona will be impleaded." In addition, it has recently been held that the defendant's inability to implead third parties is not enough to justify denying the plaintiff its chosen forum. *Alpa S.A. Agroindustrial Alemano v. ACLI International, Inc.*, 573 F.Supp. 1070 at 1077.

■ Finally, while a foreign plaintiff is entitled to less deference in its choice of forum than a citizen or resident of the United States, *see, e.g., Piper Aircraft Company, supra,* 454 U.S. at 256 n. 23,

102 S.Ct. at 266 n. 23, in *Alegria v. Grand Bassa Tankers, Inc.,* 336 F. Supp. 401, 403 (S.D.N.Y.1971), the court stated that unless the defendant clearly establishes that it will be unfairly prejudiced, an admiralty action by non-residents should not be dismissed on the ground of *forum non conveniens* where the defendant maintains a principal place of business within the plaintiff's chosen forum.

## CONCLUSION

ABS's motion to dismiss on the ground of *forum non conveniens* is denied. Given that New York is ABS' principal place of business; the ABS' rules are formulated and interpreted here, that ABS' rules are afforded statutory effect in the United States, and that ABS and SCI communicated in English, both the private interests of the litigants and the public concerns involved warrant the retention of the action in the Southern District of New York.

SO ORDERED.