**HATZLACHH SUPPLY INC., Plaintiff,**

v.

**TRADEWIND AIRWAYS LIMITED, Defendant.**

**No. 83 Civ. 7249 (SWK).**

United States District Court, S.D. New York.

April 16, 1987.

Goldberg & Carlton by Gary M. Carlton, New York City, for plaintiff.

Condon & Forsyth by Michael J. Holland, Stephen J. Fearon, Eugene Massamillo, John F. Schutty, III, New York City, for defendant.

KRAM, District Judge.

This action is brought in diversity pursuant to 28 U.S.C. § 1332(a)(2). Plaintiff Hatzlachh Supply Inc. ("Hatzlachh") alleges breach of contract, conversion and negligence arising from defendant Tradewind Airways Limited's ("TAL's") alleged misdelivery of two of Hatzlachh's cargo shipments on TAL to Kano, Nigeria in October 1980. The crux of Hatzlachh's complaint is that TAL allegedly failed to comply with the terms of the air waybills and released the shipments without first having obtained proper endorsements on the documents of carriage from the consignee, the Savannah Bank of Nigeria Limited ("Savannah"). As a result, Hatzlachh contends it has not received payment for the goods from the Difson Company ("Difson") of Nigeria, which had contracted for the goods. Hatzlachh seeks damages from TAL in the amount of $343,600.80 plus interest. The action is presently before the Court on TAL's motion to dismiss on the ground of *forum non conveniens* pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. For the reasons set forth below, TAL's motion is denied.

## I.

Hatzlachh is a corporation incorporated and with its principal place of business in New York. TAL is a corporation organized and existing under the laws of the United Kingdom of Great Britain. The activities complained of occurred at the cargo's destination in Nigeria.

TAL moves to dismiss for *forum non conveniens.* TAL argues that the *Gilbert* criteria [*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)] when applied to this case, mandate dismissal because both the private interest factors and the public interest factors all weigh heavily in favor of dismissal of this action and trial in Nigeria.

Hatzlachh, on the other hand, contends that the doctrine of *forum non conveniens* is not applicable here because the Nigerian courts are not a viable alternative forum for this litigation given current conditions and recent judicial developments in that country. Alternatively, Hatzlachh argues that the balance of *Gilbert* factors is not strongly in favor of TAL and, as a result, Hatzlachh's choice of forum should not be disturbed.

## II.

■■■ The doctrine of *forum non conveniens* presupposes "at least one alternative and adequate forum" in which the litigation can proceed, *Canadian Overseas Ores Limited v. Compania de Acero del Pacifico*, 528 F.Supp. 1337, 1342 (S.D.N.Y.1982), *aff'd*, 727 F.2d 274 (2d Cir.1984), and *Gilbert* furnishes the criteria for choosing between the alternative forums. That the alternative forum is in a foreign country generally is not a bar to dismissal on the ground of *forum non conveniens. See, e.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Overseas National Airways, Inc. v. Cargolux Airlines International, S.A.*, 712 F.2d 11 (2d Cir.1983); *Panama Process, S.A. v. Cities Service Co.*, 650 F.2d 408 (2d Cir. 1981); *Calavo Growers of California v. Generalii Belgium*, 632 F.2d 963 (2d Cir. 1980, *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); *In re Union Carbide Corporation Gas Plant Disaster at Bhopal, India in December, 1984*, 634 F.Supp. 842 (S.D.N.Y.1986), *modified on other grounds and aff'd*, 809 F.2d 195 (2d Cir.1987). Nonetheless, where the adequacy of the alternative forum is "not established," it "cannot be presumed," and a motion to dismiss for *forum non conveniens* must be denied. *Canadian Overseas Ores*, 528 F.Supp. at 1342–43 (The hostility of the Chilean government to the United States and the influence of that government on its judiciary rendered a fair trial in Chile impossible.). *See also Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62 (2d Cir.1981) (As a practical matter, dismissal on grounds of *forum non conveniens* will deny plaintiff

"any day in court at all since it is not going to go half way around the world to Taiwan, hire counsel there, and then try, without compulsory process, to get witnesses to go there from England, New York and Belgium.").

Plaintiff points to a Travel Advisory issued by the Bureau of Consular Affairs of the United States Department of State for the position that the reliability of the Nigerian legal system is, at a minimum quite suspect. The Travel Advisory provides:

LEGAL SYSTEM—THE MILITARY GOVERNMENT WHICH CAME TO POWER IN DECEMBER 1983 SUSPENDED PORTIONS OF THE NIGERIAN CONSTITUTION. ALTHOUGH MANY OF THE PREVIOUSLY EXISTING CIVIL AND CRIMINAL LAWS REMAIN IN FORCE, ALL NEW LEGISLATION AT THE STATE AND FEDERAL LEVEL IS BY DECREE. VIOLATORS OF DECREES NORMALLY APPEAR BEFORE A SPECIAL MILITARY TRIBUNAL. [ ] THE NEW MILITARY GOVERNMENT WHICH TOOK POWER IN AUGUST 1985 HAS TAKEN ACTION TO END HUMAN RIGHTS ABUSES UNDER THESE DECREES. OVER 100 DETAINEES HAVE BEEN RELEASED, THE DECREE BANNING PUBLIC CRITICISM OF THE GOVERNMENT HAS BEEN REPEALED AND OTHERS ARE UNDER REVIEW. IT IS RECOMMENDED THAT U.S. CITIZENS TRAVELLING TO NIGERIA DETERMINE THE RELEVANCE OF THESE DECREES TO AVTIVITIES THEY PLAN TO UNDERTAKE BY SEEKING ADVICE FROM LEGAL COUNSEL, U.S. GOVERNMENT AGENCIES, OR APPROPRIATE NIGERIAN AUTHORITY PRIOR TO ENGAGING IN THESE ACTIVITIES IN NIGERIA.

In this regard, Hatzlachh cites several alleged criminal violations of Nigerian decrees which were dealt with by military tribunals.

Hatzlachh also contends (1) that, if Hatzlachh were successful in the Nigerian courts, it would be prohibited from remov-

ing its judgment from Nigeria because, as the Travel Advisory indicates, a maximum of 20 Naira, or approximately $20.00 may be taken out of the country, and (2) that there are severe health and other risks attendant to travel to Nigeria which make it difficult, if not impossible, for Hatzlachh's president and sole witness, who is 60 years old, to litigate in that forum.

TAL offers the sworn declaration of Nigerian solicitor Akinloye Adejare Sanda, which was submitted in a related case, *Hatzlachh Supply Inc. v. Savannah Bank of Nigeria*, 649 F.Supp. 688 (S.D.N.Y.1986), for the position that (1) Hatzlachh has standing to bring this action in Nigeria; (2) Nigerian courts are competent to hear and dispose of this commercial dispute; (3) Hatzlachh's representatives would not have to appear in person in Nigeria; (4) foreign plaintiffs are treated fairly by Nigerian courts; (5) all relevant trial witnesses are subject to the compulsory process of the Nigerian courts; and (6) Nigerian courts are free from government interference.

■ As in *Hatzlachh Supply, Inc. v. Savannah Bank of Nigeria*, the Court has reviewed the relevant submissions and determines that:

> Defendant presents an affidavit which voices the opinion that Nigeria is a "fair forum," ... and that if plaintiff wins he can "apply" to the proper authorities to take out his award.... It is not guaranteed that if plaintiff wins, he can circumvent Nigeria's strict currency controls. Moreover, defendant states that under Nigerian law plaintiff has until 1987 to start an action in Nigeria.... It is unclear from the declaration if the relevant law bars suit at the commencement of 1987 or at a later date. Since defendant has not been precise, it would be unfair to force plaintiff into preparing for litigation in Nigeria in such a limited time frame.

*Hatzlachh Supply Inc. v. Savannah Bank of Nigeria*, 649 F.Supp. at 692.

Accordingly, the Court concludes that the Nigerian courts may not provide an adequate alternative forum in which to hear plaintiff's complaint.

### III.

Assuming, arguendo, that Nigeria does provide an adequate alternative forum, the Court finds that defendant's motion to dismiss for forum non conveniens must still be denied.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), provides the controlling standard in ruling upon *forum non conveniens* motions. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The application of the *Gilbert* criteria rests within the sound discretion of the district court. *Piper Aircraft*, 454 U.S. at 257, 102 S.Ct. at 266; *Overseas National Airways*, 712 F.2d at 14; *Union Carbide Corporation Gas Plant Disaster*, 634 F.Supp. at 845.

The *Gilbert* criteria require an evaluation of both the private interests of the litigants and the public interest in not burdening the limited resources of a forum that has, at best, a tenuous connection to the controversy. *Piper Aircraft*, 454 U.S. at 261, 102 S.Ct. at 268; *Overseas National Airways*, 712 F.2d at 14; *Shields v. Mi Ryung Construction Co.*, 508 F.Supp. 891, 893 (S.D.N.Y.1981).

■ The "private interest" criteria which must be considered include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining willing witnesses; (3) the possibility of view of the premises if appropriate; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; and (5) questions as to the enforceability of a judgment if obtained. *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. at 843.

■ The "public interest" criteria include: (1) the administrative difficulties caused by foreign litigation congesting local court dockets; (2) the imposition of jury duty on residents of a jurisdiction having little relation to the controversy; and (3) the avoidance of unnecessary problems in choice-of-law and the application of foreign

law. *Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. at 843.

■ As to the private interest criteria, TAL argues (1) that all of the witnesses—those who endorsed the documents of carriage, who cleared the shipments for Difson, who released the shipment, and who accepted but refused to pay for the shipments—are located in Nigeria, are non-party witnesses, and thus are not subject to the judicial process of this Court; (2) that all documents surrounding the circumstances of the alleged misdelivery—including the original endorsed delivery documents and all relevant bank records—are located in Nigeria; (3) that, assuming all witnesses were willing to come to New York, the cost, in terms of both money and inconvenience, would be enormous; (4) that trial in the forum chosen by Hatzlachh establishes oppressiveness and vexation to TAL out of all proportion to Hatzlachh's convenience; and (5) attempts to establish at trial in the United States how the Nigerian freight and customs system works with all the key evidence and witnesses missing will be, at best, futile.

As to the public interest criteria, TAL argues (1) that litigation here, where the controversy lacks any significant contact with New York, would be an unfair burden on the resources of this Court, considering its already congested calendar, and (2) that this matter will be governed by Nigerian law and the interpretation of laws of a foreign country is to be avoided.

Finally, TAL agrees to not contest jurisdiction of the Nigerian courts and to not assert any defenses it otherwise would not have had when this action was commenced, provided a new action is commenced in Nigeria within 90 days of the Court's order.

Hatzlachh argues that the subject transaction has substantial contacts to this jurisdiction in that (1) plaintiff is a New York corporation; (2) defendant does and solicits business in New York City; (3) the Hatzlachh-TAL agreement was entered into in New York City; (4) the goods were delivered in New York City and transported to Nigeria from New York City; (5) TAL's services were paid for by Hatzlachh from New York City; (6) Difson negotiated the sale with Hatzlachh in New York City; and (7) the Savannah Bank is affiliated with the Bank of America N.A. & S.A. and its board of directors were United States citizens.

Hatzlachh also argues (1) that travel to Nigeria of Hatzlachh's president who manages the firm virtually alone would bring Hatzlachh's business to a standstill, while only a few of TAL's employees would be required to travel to New York and, as a result, the disruption to TAL would be relatively minor; (2) that foreign law may not be implicated in this straightforward contract case; (3) that swift travel and communication are available; and (4) that the documentary evidence is not voluminous and is within TAL's control in Nigeria.

Finally, Hatzlachh argues that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. at 843.

TAL's contention that this suit has no connection with the Southern District of New York is true only to the extent that the trip and alleged misdelivery occurred outside the United States. Hatzlachh correctly points to numerous New York connections and contacts to this litigation.

TAL's contention that all witnesses and proof lie outside this district is not adequately supported by a listing of the particular witnesses necessary to TAL's defense and the nature of their testimony. While TAL generally suggests that employees of the Savannah Bank, John Holt Shipping Services, Ltd., and Difson are vital to its defense, TAL fails in most instances to specify which employees and why such testimony is necessary. *Ocean Shelf Trading Inc. v. Flota Mercante Grancolombiana, S.A.*, 638 F.Supp. 249, 251 n. 4 (S.D.N.Y. 1986); *G.B.C. Nigeria (Ltd.) v. M.V. Sophia First*, 588 F.Supp. 76, 78 (S.D.N.Y. 1984). Even if Tal does present such a list, it has not shown why the testimony of these witnesses could not be obtained in the form of depositions or letters rogatory. *Hatzlachh Supply Inc. v. Savannah Bank of Nigeria*, 649 F.Supp. at 692–93; *G.B.C.*

*Nigeria,* 588 F.Supp. at 80, particularly in light of the likely importance of documentary proof and the relative unimportance of live testimony, *G.B.C. Nigeria,* 588 F.Supp. at 80.

Moreover, TAL fails to state what sources of proof it requires which cannot be brought here with relative ease, particularly in light of the fact that most documentary evidence appears within TAL's control in Nigeria, *G.B.C. Nigeria,* 588 F.Supp. at 79. As the Second Circuit has noted, "advances in modern telecommunications and jet travel may further circumscribe a district court's discretion in dismissing a suit on the ground of *forum non conveniens.*" *Overseas Programming Companies, Ltd. v. Cinematographische Commerzanstalt,* 684 F.2d 232 n. 1 (2d Cir.1982) (and cases cited therein).

TAL's further contention that Hatzlachh's choice of forum is an attempt by Hatzlachh to vex or harass TAL is unsupported by the facts, ignores the relative ease of modern transportation facilities and rings hollow in light of the suggested alternative forum—Nigeria. *G.B.C. Nigeria,* 588 F.Supp. at 79.

### IV.

In sum, for the reasons set forth above, this Court concludes that the balance of factors is not so strongly in TAL's favor to warrant dismissal. Accordingly, TAL's motion to dismiss on the ground of *forum non conveniens* pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure is denied.

SO ORDERED.